## THE STATE OF KANSAS V. JOB TATLOW, SR.

1. INSTRUCTIONS—*Refusal, When not Error.* It is not incumbent on the trial court to accept and adopt in its charge to the jury the instructions as framed and requested by the parties, even though they may be appropriate and state the law correctly. If the principles contained in the instructions refused are embraced and fairly stated by the court in its general charge, there is no just ground of complaint.

2. NEW TRIAL; *Conflicting Testimony; Conclusive Finding.* Where the question submitted to the district court upon a motion for a new trial was the alleged intoxication of a member of the jury while the case was on trial, and upon which there was competent but conflicting oral testimony, the finding of the trial court thereon will be accepted as controlling in this court.

3. JURY; *Intoxicating Liquor; Verdict—When Set Aside, When Not.* The mere drinking of intoxicating liquors by a juror during the progress of the trial, unless it is furnished to him by the prevailing party, is not of itself sufficient to set aside the verdict; and the fact that the juror was under the influence of intoxicating liquor during the recess of the court, but had recovered therefrom before the trial was resumed, while it is improper conduct, to be severely condemned, will not overturn the verdict unless there is reason to believe that the misconduct in some way influenced the verdict.

### *Appeal from Nemaha District Court.*

AT the June Term, 1885, *Job Tatlow sr.* was prosecuted on the charge of feloniously assaulting and shooting at one Albert G. Craig, with intent to kill. The jury found the defendant guilty of an assault only, and the court sentenced him to pay a fine of $150. He appeals. The opinion states the facts.

*Taylor & Bassett,* and *Conwell & Wells,* for appellant.

*S. B. Bradford,* attorney general, for The State; *Edwin A. Austin,* of counsel.

The opinion of the court was delivered by

· JOHNSTON, J.: Job Tatlow sr. was prosecuted in the district court of Nemaha county on the charge of feloniously assaulting and shooting at one Albert G. Craig with intent to

kill. On the trial of the cause before a jury the defendant was found guilty of assault only, and was adjudged by the court to pay a fine of $150. He appeals to this court, and alleges two errors. One is the refusal of the court to give certain special instructions asked by him, and the other is the refusal to grant a new trial for alleged misconduct of the jury.

Some of the facts in the case are not in dispute, and among them the following may be mentioned: The defendant was engaged in merchandising, and had an unsettled account against Craig. On August 8, 1884, Craig and a man named Ramsey went to the defendant's store, when Craig inquired the state of his account, and proposed a settlement with the defendant. Tatlow went to his desk, where an examination of the account was made, when a dispute arose over one item of the account. Some words passed between them, when Craig struck the defendant upon the face. The defendant then put Craig and Ramsey out of the store. They stopped upon the front porch of the store, to which place they were followed by the defendant with a drawn pistol. When he came up with them he ordered them to leave, and about that time fired the pistol, shooting Craig upon the head. The defendant did not deny the shooting, but claimed that the act was justifiable as being in self-defense. He contended, and offered testimony tending to show, that just before he fired the shot some demonstrations were made by Craig, which indicated and were sufficient to lead him to believe that Craig was about to draw a weapon from his pocket; also that threats had previously been made by Craig against the defendant; and that when Craig and his companion came to the store on the day of the shooting, they were both intoxicated. After the testimony was closed the defendant presented and requested thirteen special instructions, which stated at great length and with much repetition the law of self-defense, and which related alone to that subject. These were refused, and the complaint is that in its general charge the court failed to fully state the law upon this subject. The claim is not well founded. It may be conceded that the doc-

6 — 34 KAS.

trine contended for in the instructions is in the main correct. It is not incumbent on the court, however, to accept and adopt the instructions as framed and requested by the parties, even though they are appropriate and state the law correctly. If the principles contained therein are embraced and fairly stated by the court in its general charge to the jury, there is no just ground of complaint.

1. Instructions— refusal, when not error.

In this case it seems to us that the court in its charge gave due consideration to the appellant's theory and the facts which he sought to establish, and fairly stated every principle of law that was asked for. The chief complaint of the appellant is the alleged omission of the court to state the doctrine that a party may defend himself with a pistol or other weapon when there is a reasonable apprehension that his life will be taken, or great bodily injury inflicted by the assailant; that he is justified in acting upon the facts as they appear, and is not to be judged by the facts as they are, and that of the reasonableness of the apprehension the jury are to be the judges. To show that there was no such omission, and that the doctrine of self-defense as applied to the facts which the defendant undertook to prove, was fully and fairly presented to the jury, we need only quote a portion of the charge relating to that subject, wherein the court says:

"If, however, you find from the evidence that after the striking of the defendant in the store the defendant ordered said Craig, or said Craig and Ramsey, out of the store, and that they would not go until the defendant drove them out with a revolver, and that when they got to the porch they made another stand, and that said Albert G. Craig then made demonstrations as if he were drawing a weapon, and under such circumstances the defendant shot him, then it will be your duty to consider, from all of the circumstances, whether such shooting by the defendant was justifiable as an act of self-defense, or not.

"The shooting by the defendant at said Albert G. Craig would be justified under our laws only in case it was committed by the defendant when there was reasonable ground to apprehend a design on the part of said Albert G. Craig to kill the defendant, or to do him great bodily harm, and that there was

imminent danger of such design being accomplished; and the jury are the judges as to whether the defendant had, at the time of the shooting, reasonable ground to apprehend such a design, or not, and whether or not the defendant had reasonable ground to apprehend imminent danger of such design being immediately accomplished. Actual and real danger is not always necessary to justify an act of self-defense. Thus, if 'A,' intending to frighten 'B,' should draw an empty revolver and point it at 'B'—at the same time threatening to shoot—and 'B,' not knowing that the revolver was empty, and believing that 'A' intended to shoot him, should kill 'A,' such killing would be justifiable homicide. The rule of law is, that if the defendant had reasonable ground to apprehend that he was in imminent danger, then he is justified in defending himself.

"There may be cases where demonstrations by a man as if to draw a weapon would justify another in shooting him. It is for you to judge from the circumstances detailed in the evidence whether this is such a case, or not. It should be remembered, however, that the defendant does not claim to have seen anything resembling a weapon in the hands of the said Albert G. Craig, nor about his person. Usually a man should be slow to use a deadly weapon upon his adversary not known to be also armed. But it is for you to determine from the evidence whether the defendant, intending to be revenged upon the said Albert G. Craig for the blow received in the store, shot him after he went out, or whether after the said Albert G. Craig had gone out and stood upon the porch, he made such demonstrations as if to draw a weapon as to raise in the mind of the defendant a reasonable apprehension of imminent danger of loss of his own life, or of great bodily harm, unless he either killed or disabled the said Albert G. Craig immediately."

An examination of the entire charge satisfies us that the case was fairly submitted to the jury, and the objection of the appellant to the instructions must be overruled.

The misconduct of the jury, charged and relied upon by the defendant for error, is the alleged intoxication of the juror, Charles Stafford, during the progress of the trial. On the motion for a new trial, there was offered considerable testimony, both written and oral. In behalf of the appellant, it is claimed—and there was some testimony to the effect—that

the juror was under the influence of intoxicating drinks while the case was being tried. It was testified that he had a bottle of intoxicating liquor in his pocket, and that he invited persons to drink with him; that he appeared drowsy while the testimony was being received, and that an officer of the court found it necessary to awaken him; and also that his actions, both in the jury box and upon the streets at recess, were such as to indicate that he was intoxicated. On the other hand, the sheriff and his deputy, who were the only officers that pretended to exercise any control over the court room, or of the jury while there, deny that they awakened the juror during the trial, or that there was any necessity to do so; and they testified that they observed him during the introduction of the evidence, and while the case was being tried before the jury, and did not notice that he was under the influence of liquor. One of the jurors states that, at no time while they were in the jury room, did the juror, Stafford, appear to be under the influence of liquor. The testimony of the county attorney is, that he had good opportunity to and did observe the conduct and condition of Stafford while the case was on trial, and that he noticed no evidence of intoxication. He says that during a certain recess, the juror evidently drank some liquor, though he was not drunk, nor unfitted to sit as a juror; that the fact that he had been drinking was brought to the notice of the court, and that thereupon an adjournment of two hours was had, and the juryman was put in charge of the sheriff, and the trial was not resumed until the juror had entirely recovered — if he were in fact so incapacitated from the effect of drink as to be unable to realize the full force and effect of evidence. On this disputed state of facts, the court found against the defendant, and overruled the motion for a new trial. Under

2. New trial; conflicting testimony; conclusive finding.

these circumstances, we are bound to presume that during the trial of the cause, and while it was under consideration by the jury, Stafford was not intoxicated, nor unfitted for the performance of his duty. That he drank liquor after the jury was impaneled, and that he was under its influence during the recess of the

court, is shown by the testimony. His conduct in this respect is highly reprehensible, and merits severe condemnation. Without regard as to whether mischief may have been done, or whether he was sober when he sat as a juror in the case, it is insisted that his misconduct vitiates the verdict. Some of the courts have gone to this extent, and have held that the use of intoxicating liquors by a juror at any time after the jury is impaneled, and before the result is reached, in quantities however small, is good ground for setting aside the verdict, without regard to whether such use may have influenced the verdict; and this is the rule contended for by the appellant. Upon this question there is great disparity of opinion among the courts, but it is no longer an open or unsettled one in this state. In *Perry v. Bailey*, 12 Kas. 539, it is ruled that the mere drinking of intoxicating liquor by a juror during the progress of the trial, which was not furnished by the prevailing party, is not of itself sufficient to set aside the verdict. This rule was afterward referred to and affirmed in *Larimer v. Kelley*, 13 Kas. 78, where it is decided that the mere drinking of intoxicating liquor by a juror during a recess, and while the jury are separated, will not of itself justify a disturbance of the verdict. The leading consideration in all these cases is, whether the use of the liquor improperly influenced the verdict of the jury; and if the trial court has any reason to think that its use by a juror had any influence on his mind, or in any way affected the verdict, it should not hesitate to grant a new trial. It appears here that the judge acted with due consideration and caution. When it came to his notice that the juror had been drinking during the recess, and possibly might not be in a fit condition to properly try the case, he passed it over for the time being, and did not resume the trial for two hours, when the doubts about his condition were removed. Under all the circumstances of the case, and assuming, as we must, that the juror was not intoxicated while the case was before the jury, we do not feel warranted in disturbing the verdict.

The judgment of the district court will therefore be affirmed.

All the Justices concurring.