The STATE of Utah, Plaintiff and Respondent,

v.

Daniel Velarde GARTEIZ, Defendant and Appellant.

No. 19442.

Supreme Court of Utah.

Sept. 4, 1984.

Milton T. Harmon, Nephi, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

The defendant, a citizen of Spain, had resided in the United States for 18 months when he was convicted of aggravated robbery, kidnapping, and attempted extortion. His sole point urged on appeal, having reviewable merit, is his claim that he was unfairly denied a jury trial. In waiving the jury trial in the first instance, defendant claims he did not understand what he was doing and that he did not do so knowingly or intelligently.[1] The basis for such conclu-

---

1. *Duncan v. Louisiana,* 391 U.S. 145, 391 U.S.     194, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Pat-*

sion was a claim that he spoke only broken English and equally had a broken understanding of the language.

Defendant's claim of error belies the clear record in this case. The trial judge, aware of the claimed infirmities, was cautious in protecting the defendant's right to a jury trial. At trial, the judge examined the defendant as to the legitimacy and binding nature of his waiver of the jury. At the beginning of the trial and in the presence of defense counsel, the judge made it clear that defendant was waiving his right to a jury, and counsel lodged no objection. The judge required two interpreters to be sworn. At that juncture, the defendant's counsel made the following statement:

> Your Honor, in this matter I have explained to [defendant] his rights to have a jury trial.... [H]e has heretofore indicated that he would like to waive the right and just have the matter tried by Your Honor.

The court inquired if the defendant understood he had "an absolute right" to have the matter tried "to a jury of eight people." Defendant answered "yes" through the interpreter. The court then inquired, "You are asking me to allow you to waive that right," and the response again was "yes." As emphasis, the judge said, "[A]nd you understand I can refuse to waive that right ... and that the prosecutor must agree to that too." Defendant again answered in the affirmative. To assure no misunderstanding, the court asked the prosecutor if he agreed to the waiver, and the prosecutor said he did.

*Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942), is dispositive of both the issue of waiver and the fact of voluntary and intelligent action by an accused with court approval. In referring to *Patton v. United States, supra* note 1, the Court in *Adams* held as follows:

> The *Patton* decision left no room for doubt that a determination of guilt by a

court after waiver of jury trial could not be set aside and a new trial ordered except upon a plain showing that such waiver was not freely and intelligently made. If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. Simply because a result that was insistently invited, namely, a verdict by a court without a jury, disappointed the hopes of the accused, ought not to be sufficient for rejecting it. And if the record before us does not show an intelligent and competent waiver of the right to the assistance of counsel by a defendant who demanded again and again that the judge try him, and who in his persistence of such a choice knew what he was about, it would be difficult to conceive of a set of circumstances in which there was such a free choice by a self-determining individual.

The judgment is affirmed.

DURHAM, Justice (concurring specially).

I concur in the result because the procedure followed by the district court comports with current law and standards. However, I write separately to emphasize the problems with current law that this case points out and to suggest the need for more adequate judicial standards for the waiver of jury trials.

Mr. Garteiz is a citizen of Spain. At the time of his arrest, he had been in the United States for approximately 18 months. He had some literacy in English, but the level of his competence is unknown. During the trial, Mr. Garteiz required an interpreter. He received no explanation directly from the court about the nature and extent of his right to a jury trial. The exchange between the defendant and the court con-

ton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); State v. Yeck, Utah, 566 P.2d 1248 (1977); State v. Kelsey, Utah, 532 P.2d 1001 (1975).

sisted of four questions, to each of which the defendant answered, "Yes." The court asked if the defendant understood he had the right to a jury, if he wished to waive that right, if he understood the court could refuse such a waiver, and if he understood the prosecutor had to agree to the waiver.

It seems unlikely that a defendant in these circumstances would understand the implications and the extent of his waiver, namely, that he was giving up the right to have eight of his "peers" decide unanimously, beyond a reasonable doubt, that he was guilty.

The courtroom is an inherently intimidating place. Criminal defendants, especially those unfamiliar with the English language and courtroom procedure, are even more likely to be intimidated than other spectators or trial participants. Further, when courts are overcrowded and defendants are with court-appointed counsel, the potential is great that economic concerns, time pressures and other stresses on the court and counsel may influence a decision that should be made carefully, thoughtfully and with the benefit of accurate, objective information about the alternatives.

There are presently no explicit procedural safeguards in our courts, no protective devices to assure that defendants understand what a jury's function is and that their right to a jury trial can in no way be abrogated without their full, informed consent. The right to a jury trial will be meaningless in many cases if a defendant's understanding of his waiver is probed no further than occurred in this case. Therefore, I urge trial courts to undertake a careful explanation of the nature of the right to a jury trial before accepting a defendant's waiver thereof, particularly where the defendant's circumstances may appear on their face to create obstacles to his clear understanding of the choice he is making.

HOWE, J., concurs in the concurring opinion of DURHAM, J.

ZIMMERMAN, J., does not participate herein.