2013 UT App 220

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF D.M., A PERSON UNDER
EIGHTEEN YEARS OF AGE.

D.M.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20120085-CA
Filed September 6, 2013

Third District Juvenile, Salt Lake Department
The Honorable Andrew A. Valdez
No. 1022844

Kristine M. Rogers, Monica Maio, and
David L. Johnson, Attorneys for Appellant
John E. Swallow and Kris C. Leonard, Attorneys
for Appellee

JUDGE WILLIAM A. THORNE JR. authored this Memorandum
Decision, in which JUDGES STEPHEN L. ROTH and
MICHELE M. CHRISTIANSEN concurred.

THORNE, Judge:

¶1     D.M. appeals from the juvenile court's order adjudicating
him delinquent on one count of sexual abuse of a child (Allegation
III),[1] a second degree felony when committed by an adult. *See*

---

[1]D.M. was also adjudicated delinquent of one count of
sodomy on a child (Allegation IV) arising from events that

(continued...)

*generally* Utah Code Ann. § 76-5-404.1(3) (LexisNexis Supp. 2013). We affirm.

¶2     Allegation III originally charged D.M. with sodomy on a child, asserting that eleven-year-old D.M. had made nine-year-old T.I. perform oral sex on him during a 2009 sleepover at D.M.'s home. On the first day of D.M.'s trial on September 23, 2011, T.I. testified that during the sleepover D.M. had dared him to crawl under a futon. D.M. joined T.I. under the futon and asked him to remove his pants. When T.I. refused, D.M. pulled T.I.'s pants down and touched T.I.'s testicles for a short period of time. D.M. then went into the bathroom for a few minutes, during which time T.I. left D.M.'s house and returned home.

¶3     At the end of the first day of trial, after the State rested its case, the State asked the juvenile court to amend the date of the incident alleged in Allegation IV to comport with the evidence adduced at trial. The juvenile court allowed the amendment but granted D.M. a trial continuance to investigate and prepare any defenses that might be created by the amendment.

¶4     D.M. then asked the juvenile court to dismiss Allegation III because the State had failed to present testimony of oral–genital contact as required by the State's sodomy theory.[2] *See generally id.* § 76-5-403.1(1) (defining sodomy on a child). The State responded by asking that Allegation III be amended to the lesser offense of

---

[1](...continued)
occurred after the events of Allegation III. D.M. does not challenge his adjudication on Allegation IV on appeal.

[2]The transcript reveals that D.M. asked for a directed verdict rather than for dismissal. However, both the juvenile court and the parties thereafter and on appeal refer to D.M.'s motion as a motion to dismiss, and we accept that characterization for purposes of this decision.

sexual abuse of a child, which does not contain an element of oral–genital contact. *See id.* § 76-5-404.1. After a discussion with the parties, the juvenile court ruled from the bench on the competing requests, stating, "I'm going to deny the motion to dismiss. I'm going to allow you to amend to sex abuse of a child . . . ." At the end of the trial, which resumed six weeks later, the juvenile court adjudicated D.M. delinquent on Allegations III and IV.

¶5     On appeal, D.M. argues that the juvenile court erred in not dismissing Allegation III because the State failed to present evidence of oral–genital contact in its case in chief. To survive a mid-trial motion to dismiss, the State must have established a prima facie case of guilt by producing "'believable evidence of all the elements of the crime charged.'" *State v. Emmett*, 839 P.2d 781, 784 (Utah 1992) (quoting *State v. Smith*, 675 P.2d 521, 524 (Utah 1983)). "The denial of a motion to dismiss for failure to establish a prima facie case is a question of law we review for correctness." *State v. Spainhower*, 1999 UT App 280, ¶ 4, 988 P.2d 452.

¶6     It is undisputed that the State failed to present evidence of oral–genital contact in support of Allegation III, and thus the allegation could not survive D.M.'s motion to dismiss as originally charged. However, the State responded to D.M.'s motion by asking the juvenile court to amend the charge to sexual abuse of a child, which has no element of oral–genital contact, and the juvenile court granted the State's request. D.M.'s appellate brief does not address the effect of the juvenile court's amendment of Allegation III on his motion to dismiss, nor does it raise any argument that the amendment was improper.[3] Because the juvenile court amended

_____

[3]In his reply brief, D.M. argues for the first time that the juvenile court's September 23, 2011 amendment of Allegation III was improper because it charged a new offense and—despite the nearly six-week delay between the first and second days of trial—failed to give D.M. adequate time to prepare a defense.

(continued...)

Allegation III to charge sexual abuse of a child, we see no error in the juvenile court's denial of D.M.'s motion to dismiss that allegation altogether.

¶7      We acknowledge D.M.'s assertion that there was confusion in the days leading up to the resumption of trial on November 2, 2011, about whether the State's prosecution of Allegation III would proceed on a sodomy theory or as sexual abuse of a child. However, at an October 31, 2011 telephone conference that D.M. had requested to resolve confusion over the allegations, D.M. failed to raise the issue of what crime was being charged in Allegation III. Instead, the conference focused solely on the unrelated amendment to Allegation IV. D.M. did not apprise the juvenile court of the confusion over the status of Allegation III, even when the State indicated that the only amendment to the petition was the amendment to Allegation IV. Nor did he raise the issue upon the resumption of trial.

¶8      Thus, D.M. had multiple opportunities to address and resolve the alleged confusion over the amendment to Allegation III prior to his adjudication for sexual abuse of a child as alleged in the amended allegation. Under these circumstances, D.M.'s complaint of unfair surprise that he was ultimately adjudicated for sexual abuse of a child is unavailing.[4] *Cf. State v. Valdez*, 2006 UT 39, ¶ 44,

---

[3](...continued)
"However, we will not address arguments raised for the first time in an appellant's reply brief." *State v. Bryant*, 2012 UT App 264, ¶ 24 n.5, 290 P.3d 33.

[4]We acknowledge that the juvenile court did not rely on its prior amendment of Allegation III and instead purported to adjudicate sexual abuse of a child as a lesser included offense of the original charge of sodomy. However, because we hold that the juvenile court had already amended Allegation III to charge

(continued...)

140 P.3d 1219 (discussing "sandbagging" in the context of untimely objections to jury makeup); *State v. Jackson*, 2011 UT App 318, ¶¶ 28–34, 263 P.3d 540 (applying a forfeiture analysis to a defendant's failure to raise a statute of limitations defense prior to his conviction on the time-barred offense).

¶9     D.M. further argues that the State presented insufficient evidence to establish the crime of sexual abuse of a child because the State did not establish D.M.'s "intent to arouse or gratify the sexual desire of any person." Utah Code Ann. § 76-5-404.1(2) (LexisNexis Supp. 2013). Although he did not present this argument to the juvenile court, D.M. argues that the juvenile court's adjudication that he had committed sexual abuse of a child constitutes plain error because there was no direct evidence of D.M.'s sexual intent and the facts are not so obviously or explicitly sexual that an inference of sexual intent is justified. *See generally State v. Verde*, 770 P.2d 116, 121–22 (Utah 1989) (discussing plain error as an exception to the preservation rule). However, we must sustain the juvenile court's judgment unless "it is against the clear weight of the evidence" or we otherwise reach "a definite and firm conviction that a mistake has been made." *In re K.O.*, 2010 UT App 155, ¶ 5, 238 P.3d 59 (citation and internal quotation marks omitted). Further, we will uphold a juvenile court's inferences "'unless the logic upon which their extrapolation from the evidence is based is so flawed as to render the inference clearly erroneous.'" *Id.* (quoting *State v. Briggs*, 2008 UT 75, ¶ 11, 197 P.3d 628).

---

[4](...continued)
sexual abuse of a child, we need not address D.M.'s argument that the juvenile court committed plain error in concluding that sexual abuse of a child is a lesser included offense of sodomy. Because Allegation III had already been amended to charge sexual abuse of a child rather than sodomy, any error by the juvenile court in treating that allegation as a sodomy charge and then reducing it has no effect on the validity of D.M.'s adjudication on the actual charge stated in the amended allegation.

¶10    Although D.M. is correct that there was no direct evidence of his intent to gratify or arouse a sexual desire, intent "is a state of mind, which is rarely susceptible of direct proof." *State v. Robertson*, 2005 UT App 419, ¶ 15, 122 P.3d 895 (citation and internal quotation marks omitted). In the absence of direct proof, intent "can be inferred from conduct and attendant circumstances in the light of human behavior and experience." *Id*. (citation and internal quotation marks omitted). Such inferences are routinely employed in cases requiring proof of sexual intent. *See, e.g.*, *State v. Bhag Singh*, 2011 UT App 396, ¶¶ 9–10, 267 P.3d 281 (mem.) (inferring intent where defendant kissed and fondled the victim); *State v. Hall*, 946 P.2d 712, 724 (Utah Ct. App. 1997) (inferring intent where the defendant pulled down the victim's shorts and stroked her genital area).

¶11    In this case, the juvenile court heard testimony from T.I. that D.M. had pulled down T.I.'s pants and touched his testicles while the two of them were under a futon during a sleepover. T.I. testified that the incident made him feel "scared," and the juvenile court expressly found that T.I. was a "very credible" witness. In light of D.M.'s conduct in exposing and touching T.I.'s testicles and the "attendant circumstances," *see Robertson*, 2005 UT App 419, ¶ 15 (citation and internal quotation marks omitted), we cannot say that the juvenile court's inference that D.M. possessed a sexual intent "is so flawed as to render the inference clearly erroneous," *see In re K.O.*, 2010 UT App 155, ¶ 5 (citation and internal quotation marks omitted).

¶12    D.M. further argues that the ordinary standards for inferring sexual intent are insufficient to establish *his* intent because he was only eleven years old at the time of the offense. *See, e.g.*, *In re Jerry M.*, 69 Cal. Rptr. 2d 148, 154 (Ct. App. 1997) ("[T]he younger the minor the less likely his acts are with the specific intent of sexual arousal."). However, we see no indication that the juvenile court failed to consider D.M.'s young age in determining that he possessed the requisite intent. Further, D.M. presents no Utah authority for the proposition that an eleven-year-old cannot

possess sexual intent as a matter of law, nor did he present evidence below that eleven-year-olds in general—or himself in particular—are incapable of forming sexual intent.[5] Under these circumstances, we cannot say that the juvenile court's intent finding constituted plain error. *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 ("When a foundation for the [juvenile] court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence.").

¶13    For these reasons, we affirm the juvenile court's order adjudicating D.M. delinquent for sexual abuse of a child as charged in the amended Allegation III.

———————

[5]We recognize that the burden of proving D.M.'s intent was on the State.